UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:20-CR-00248-FDW-SCR

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DYRAL KEITH SHANKLE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release, (Doc. No. 33). This matter has been fully briefed, (Doc. Nos. 37, 40), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

On January 22, 2020, Defendant drove to and entered the Atrium Hospital in Wadesboro, North Carolina, with a .45 caliber pistol. (Doc. No. 18, p. 4.) Upon arrival, a security guard removed the firearm from Defendant's possession. Defendant was then treated by medical staff for a gunshot wound. In July, law enforcement went to Defendant's home to arrest him on a federal warrant. During a search of Defendant's home, officers discovered a. 40 caliber handgun on his nightstand and a rifle leaning against the bathroom door. (Id., p. 5.)

In October 2020, Defendant pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 11.) This Court varied downward and sentenced Defendant to seventy-eight months in prison, two years of supervised release, and a $100 assessment. (Doc. No. 26; Doc. No. 27, pp. 2–3.)

On July 8, 2022, Defendant submitted an electronic request to the warden for compassionate release. (Doc. No. 33, p. 6.) Forty-two days later, on August 19, 2022, Defendant

1

filed a *pro se* Motion under 18 U.S.C. § 3582 seeking a reduction of his sentence and/or compassionate release. (Doc. No. 33.) The Court ordered the United States to respond to Defendant's Motion. (Doc. No. 35.) On May 16, 2023, the United States responded in opposition, (Doc. No. 37), and Defendant filed a reply, (Doc. No. 40).

As of May 2023, Defendant had served approximately forty-three percent of his sentence. Thus far, he has no disciplinary citations. (Doc. No. 37-2, p. 1.) Defendant's current work assignments are in UNICOR and as a suicide companion and, as of May 2023, he has completed four educational courses. (Id., p. 2.) Defendant's projected release date is June 4, 2025. See https://www.bop.gov/inmateloc (last visited Feb. 13, 2024).

## II. STANDARD OF REVIEW

Defendant's motion seeks a reduction in his sentence in this case pursuant to 18 U.S.C. § 3582(c)(1)(A). A defendant may seek a modification of his sentence from the court under § 3582(c)(1)(A) for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction,'" id. (quoting § 3582(c)(1)(A)), and the reduction is "consistent with applicable policy

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions for compassionate release, as permitted under the First Step Act of 2018, and expanded the list of circumstances sufficient to support such a motion under § 3582(c)(1)(A). See U.S. Sent'g Guidelines Manual § 1B1.13. The amendments became effective on November 1, 2023. Id. They supersede much of the case law that developed over the past several years while there was no policy statement applicable to defendant-filed motions. See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). However, while drafting the new policy statement, the Sentencing Commission considered case law that developed after the enactment of the First Step Act in the absence of a binding policy statement. United States Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (discussing Amendment 814 in light of the Supreme Court's decision in Concepcion v. United States, 142 S. Ct. 2389 (2022)).

The policy statement now in effect authorizes a finding of extraordinary and compelling reasons for relief under § 3582(c)(1)(A) where the defendant is suffering from a serious physical or medical condition that requires long-term or specialized medical care that is not being provided. Further, the policy statements allows relief where "the defendant is housed at a correctional facility affected or at imminent risk of being affected by an ongoing [or imminent] outbreak of infectious disease, or [a declared] public health emergency," "the defendant is at an increased risk of suffering severe medical complications or death as a result of exposure . . . to the ongoing public health emergency," and such a risk cannot be adequately mitigated. U.S. Sent'g Guidelines Manual §§ 1B1.13(b)(1)(C), (b)(1)(D). A defendant may also demonstrate extraordinary and compelling reasons for relief where he establishes the incapacitation of an immediate family member and "the defendant would be the only available caregiver for such family member." Id. § 1B.13(b)(3)(D).

Moreover, an intervening change in law, other than an amendment to the Guidelines Manual that is not explicitly retroactive, can be considered even if that change is not retroactive. Id. § 1B.13(c). Defendant filed the instant motion before the new policy statement took effect. However, Defendant raised the then-forthcoming amendment in his reply, (Doc. No. 40, p. 2), and the Court will evaluate his Motion under the current policy statement.

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A)) (citing United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021)). Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others: "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," and "provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

The record demonstrates Defendant exhausted his administrative remedies, and the Government does not contest that he did so. (Doc. No. 37). Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release or a sentence reduction in light of the applicable § 3553(a) factors.

## III. ANALYSIS

Defendant contends the combination of his chronic asthma and the COVID-19 virus, his changed family circumstances, the BOP's harsh pandemic restrictions, and his rehabilitation efforts constitute "extraordinary and compelling" reasons that warrant a reduction in his sentence. In opposition, the Government argues Defendant fails to assert any extraordinary and compelling reasons for compassionate release.

Defendant first argues his chronic asthma constitutes an extraordinary and compelling circumstance that warrants early release because it places him at risk of suffering medical complications should he contract COVID-19. The Government concedes asthma is recognized by the CDC as a risk factor that can cause complications if coupled with COVID-19. (Doc. No. 37, p. 5.) When considering whether a defendant's serious physical or medical condition warrants early release because of COVID-19, courts assess whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023); see also U.S. Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (recognizing the Sentencing Commission considered intervening case law that predates the amendment, like Brown, in promulgating the new rule regarding infectious disease outbreaks). However, Defendant has received two doses of the COVID-19 vaccine. (Doc. No. 34, p. 38.) And the COVID public health emergency has ended.[2] Consequently, under this record, Defendant's susceptibility to COVID-19 is mitigated. And the particularized risk of contracting the disease at his prison facility is low. Defendant is housed at F.C.I. Edgefield, which currently reports zero active cases of COVID-19. See https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp, (last visited Feb. 14,

---

[2] Since Defendant filed the instant motions, the U.S. national emergency to respond to COVID-19 has ended. National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

5

2024). Defendant has also not been treated for COVID-19 while in custody, further weighing against a finding of a particularized risk of contracting the disease while incarcerated. (Doc No. 34, p. 28, 42; Doc. No. 38.) For these reasons, Defendant's alleged susceptibility to COVID does not present an extraordinary and compelling reason to reduce his sentence. See Brown, 78 F.4th at 128 (recognizing while medical conditions might put a defendant at increased risk of a severe COVID-19 infection, extraordinary and compelling reasons do not exist where that risk was mitigated by vaccine status and a defendant's failure to show a particularized risk of contracting the disease at the facility where he is incarcerated). The record demonstrates the BOP is sufficiently controlling the spread of the virus—although Defendant separately argues the very steps BOP takes to minimize his risk of contracting COVID-19 constitute an extraordinary and compelling circumstance, an argument the Court will address later.

A defendant may also show extraordinary and compelling reason exists where he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." United States Sent'g Guidelines § 1B1.13(b)(1)(C); see, e.g., United States v. Beck, 425 F. Supp. 3d 573, 581 (M.D.N.C. 2019) (finding defendant's cancer constituted an extraordinary and compelling reason because she was in urgent need of appropriate treatment to prevent the spread of disease and potential loss of life and said treatment was not being provided by the BOP). However, here, Defendant's medical records extensively indicate he is receiving adequate medical care and treatment for his chronic asthma. (Doc. No. 34, 38.) More specifically, the records show Defendant has clear and even breaths, no wheezing, and BOP prescribes him mometasone and albuterol to threat his asthma. (Doc. No. 34, pp. 39, 15; Doc. No. 38, pp. 2, 4.) Consequently, although Defendant suffers from a serious medical condition and requires long-term medical care,

he cannot claim his condition is not being appropriately treated because the record demonstrates he receives medical care and treatment as necessary. Therefore, Defendant's asthma does not constitute as an extraordinary and compelling reason to reduce his sentence because he fails to show an urgent need for medical care the BOP is not providing.

Next, Defendant argues his mother's deteriorating health condition make her incapable of caring for his disabled brother. Defendant contends this family circumstance creates an extraordinary and compelling reason to support early release because Defendant would be the only available caregiver for his disabled brother. A caregiver is deemed incapacitated if they have "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring" for the defendant's immediate family member. United States v. Curbelo, No. 7:19-CR-00100-D, 2021 WL 5169283, at *2 (E.D.N.C. Nov. 5, 2021), aff'd, No. 21-7587, 2022 WL 1135100 (4th Cir. Apr. 18, 2022). Here, Defendant provided documentation showing his mother suffers from a serious illness, Parkinson's disease, and that she was also diagnosed with a cerebral aneurysm. (Doc. No. 40-2, p. 10.) Although, per the record, Defendant's mother is still mobile, as the illness progresses it is likely she will become fully incapacitated due to the degenerative nature of Parkinson's disease.

However, Defendant fails to show how or why he would be the *only* caregiver for his disabled brother when his mother becomes incapacitated. Defendant provided documentation demonstrating his brother, an immediate family member, is paralyzed and wheelchair bound. (Doc. No. 34, p. 8.) Although both his mother and brother provided letters to the Court in support of Defendant's motion, Defendant submitted no further corroboration to prove he truly is the only available party to care for his brother. (Doc. No. 40-1); see also United States v. Rives, No. 3:13CR175, 2023 WL 4976192, at *9 (E.D. Va. Aug. 3, 2023) (holding that, although defendant

7

submitted that his sister was unable to care for his stepmother, the court could not find that he was the only caregiver for his stepmother because defendant offered no corroborating evidence). Additionally, the record shows two other siblings lived with Defendant's mother and brother at the time of Defendant's arrest. (Doc. No. 18, p. 16.) Because Defendant failed to submit any evidence showing why no other party—particularly his other siblings—could serve as his disabled brother's caregiver, he is unable to show he is the *only* possible caregiver for his brother. See United States Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C p. 207) (stating that relief is available only where "the defendant establishes both the qualifying relationship and that the defendant is the only available caregiver"). Therefore, despite Defendant's mother's deteriorating health, Defendant's need to care for his disabled brother does not to constitute an extraordinary and compelling reason to reduce Defendant's sentence.

Third, Defendant argues the BOP's harsh pandemic restrictions create an extraordinary and compelling reason that warrants early release because they limit his opportunities to earn good time credit and take advantage of educational opportunities. The pandemic-era restrictions were implemented "to reduce the risks related to COVID-19 for inmates and staff, and they do not on their own establish an extraordinary and compelling reason for compassionate release." United States v. Fuentes, No. 3:17-CR-123-MOC, 2023 WL 3959390, at *2 (W.D.N.C. June 9, 2023), aff'd, No. 23-6626, 2023 WL 8728543 (4th Cir. Dec. 19, 2023). Furthermore, Defendant's argument that such restrictions limit his opportunities to earn good time credit is without merit because he has no liberty interest in earning good time credit. See United States v. Brewster, No. 3:16-CR-220-MOC, 2023 WL 2656564, at *3 (W.D.N.C. Mar. 27, 2023) (finding that a defendant's argument that pandemic-related restrictions limit his opportunity to participate in educational programs is misplaced because he has no liberty interest in earning time credits).

8

Moreover, BOP records indicate Defendant has in fact participated in work assignments and educational courses while in custody. As of May 2023, he had completed four ACE history classes and works in UNICOR and as a suicide companion. (Doc. No. 37-2, p. 2.) Defendant's third argument for early release is without merit.

Lastly, Defendant argues his substantial rehabilitative efforts constitute extraordinary and compelling reasons for early release because they demonstrate he is preparing himself to re-enter society and become a law-abiding member of his community. Defendant has a commendable record thus far, having no prior disciplinary record during his time in BOP and holding two work assignments, which demonstrates his reliability. However, under 28 U.S.C. § 994(t), "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Therefore, although the Court acknowledges and commends Defendant's behavior while in custody, Defendant's substantial rehabilitative efforts alone do not constitute as an extraordinary and compelling reason warranting early release.

Even if Defendant had shown extraordinary and compelling reasons supporting the relief he seeks, the § 3553(a) factors do not support a sentence reduction. The need to reflect the seriousness of the offense weighs against a sentence reduction. Defendant was convicted for possessing three firearms, the first of which was confiscated after Defendant entered a hospital with it after having been involved in a shootout, and law enforcement located the other two in his home. (Doc. No. 18, p. 4-5.) In addition to the firearms, the record shows officers also discovered controlled substances in Defendant's car and home. (Id.) Consequently, the nature and circumstances of Defendant crime were serious, dangerous, and violent and weigh against compassionate release or a reduction in Defendant's sentence. Furthermore, releasing Defendant when he has served only approximately half of his sentence would not promote respect for the law.

See United States v. Cole, No. 18-20237, 2021 WL 194194, at *3 (E.D. Mich. Jan. 20, 2021) (determining that releasing the defendant early from a forty-month sentence "would not promote respect for the law or protect the public from further crimes by [defendant]"). Therefore, the § 3553(a) factors weigh against a reduction of Defendant's sentence given the seriousness of the crime and to promote respect for the law.

For the forgoing reasons, Defendant fails to assert any extraordinary and compelling reasons for compassionate release and the § 3553(a) factors do not support a reduction of Defendant's sentence.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release, (Doc. No. 33), is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Signed: February 15, 2024

Frank D. Whitney
United States District Judge